IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**CHARLES K. STONE,**

        **Petitioner,**

v.                                                          **Case No. 2:16-cv-01874**

**WILLIAM J. VEST, Warden,**

        **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 6); Petitioner's motion requesting that the court accept "new evidence" relating to his petition, (ECF No. 7); Petitioner's motion to file a brief in support of his petition, (ECF No. 8); Petitioner's motion to amend his petition, (ECF No. 18); Respondent's Motion to Dismiss Petition, (ECF No. 20); Petitioner's motion requesting that the court accept "new evidence" relating to his petition; (ECF No. 23); and Petitioner's motion for leave to file a brief in support of his petition, (ECF No. 24). This case is assigned to the Honorable Thomas E. Johnston, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned finds that the record before the court is well-developed and provides a sufficient basis upon which to resolve this matter without need for an evidentiary hearing. *See* Rule 8, Rules Governing Section 2254 Cases. Having thoroughly

reviewed and considered the record, the undersigned **FINDS** that Petitioner's § 2254 petition is untimely under the one-year statute of limitations provided in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss Petition, **DENY** Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, **DENY** as moot Petitioner's pending motions to file additional evidence and briefs in support of his petition, and **DISMISS** this case from the docket of the court.

### I. Relevant Procedural and Factual History

On May 13, 2011, Petitioner Charles K. Stone was convicted in the Circuit Court of Fayette County, West Virginia of conspiracy to commit a felony, entering a dwelling, robbery, and impersonation of a law enforcement officer. (ECF No. 20-1 at 2). He filed a direct appeal in the Supreme Court of Appeals of West Virginia ("SCAWV"), which affirmed the circuit court's decision by judgment entered on November 16, 2012. (ECF No. 20 at 2); *see, also, State v. Stone,* No. 11-1120, 2012 WL 5835071 (W.Va. Nov. 16, 2012). The SCAWV issued a mandate on December 17, 2012; however, Petitioner alleges that he was unaware of the mandate until March 6, 2013, when his sister contacted the SCAWV and was mailed a copy of same at her request. (ECF No. 26-2). Petitioner did not seek a writ of *certiorari* from the United States Supreme Court after losing his direct appeal.

On December 13, 2013, more than a year after the SCAWV's denial of Petitioner's direct appeal and at least nine months after he admittedly learned of the court's mandate, Petitioner pursued collateral relief by filing a Petition for a Writ of Habeas Corpus in the Circuit Court of Fayette County, West Virginia. (ECF No. 20-10 at 2-64). The circuit court

ultimately denied Petitioner's request for habeas relief, and Petitioner, with the assistance of appointed counsel, appealed that decision to the SCAWV. On June 15, 2015, the SCAWV issued a memorandum decision, affirming the circuit court's ruling. *See Stone v. Jones*, No. 14-0715 (W.Va. Jun. 15, 2015). Petitioner received a copy of the memorandum decision, which prompted him to write to his appointed counsel on June 29, 2015 and terminate counsel's services. (ECF No. 20-25 at 2). Thereafter, Petitioner's counsel moved the SCAWV to allow him to withdraw from the case, and Petitioner filed *pro se* motions, asking the SCAWV to allow him to file a *pro se* supplemental brief and appendix and requesting a rehearing. On July 16, 2015, the SCAWV granted counsel's motion to withdraw, denied Petitioner's *pro se* motion to file a supplemental brief and appendix, and filed his petition for rehearing. (ECF No. 20-26 at 2). On August 25, 2015, the SCAWV denied Petitioner's *pro se* motion for a rehearing. (ECF No. 20-27). On September 1, 2015, the SCAWV issued a mandate, which finalized the memorandum decision affirming the circuit court's denial of Petitioner's habeas petition. (ECF No. 20-28 at 2). Petitioner maintains that, once again, he did not receive notice of the mandate until January 13, 2016, when his sister called the SCAWV to inquire about the status of his appeal. (ECF No. 26-2 at 2).

Petitioner first sought federal habeas relief by filing a letter-form petition on February 26, 2016.[1] (ECF No. 1). Petitioner was ordered to complete and file a proper § 2254 petition, which he supplied to the Clerk on March 9, 2016. (ECF No. 6). Upon receipt of the amended petition, Respondent moved to dismiss it on the ground that the petition

---

[1] Petitioner mailed letter-form requests for federal habeas relief to five District Judges in this court, which were filed and opened as five separate cases. Because the cases allege identical facts and claims, arising from the same conduct, they were consolidated for the sake of judicial economy and fairness with the instant matter being the lead case. (ECF No. 4).

3

was not timely filed under the one-year statute of limitations prescribed in the AEDPA. (ECF Nos. 20, 21). Petitioner, by counsel, responded in opposition to the motion to dismiss, arguing that Petitioner is entitled to equitable tolling of the applicable statute of limitations due to the SCAWV's delay in providing him notice of the mandates denying his direct appeal and state habeas petition. (ECF No. 27). In reply, Respondent contends that Petitioner fails to meet the two-prong test established in *Holland v. Florida*, 560 U.S. 631, 649 (2010), which requires Petitioner to demonstrate that he had been pursuing his rights diligently and that some extraordinary circumstance beyond Petitioner's control prevented him from timely filing the petition. (ECF No. 32). Respondent further argues that Petitioner's only excuse for his dilatory petition is that he did not know the exact dates upon which the mandates were issued; however, Petitioner's own ignorance, mistake, or neglect does not warrant equitable tolling. (*Id.*).

## II. Standard of Review

Respondent filed a motion to dismiss ostensibly under Federal Rule of Civil Procedure 12(b)(6), based on Petitioner's failure to timely file his petition. (ECF No. 20). Because Respondent filed an answer concurrently with his motion to dismiss, the motion technically should be considered as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, the distinction makes no practical difference as the same standard of review applies to motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c), and both motions may be filed in section 2254 actions. *Id.* at 138-39.

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual

4

inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nevertheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a section 2254 case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.*

### III. Discussion

The AEDPA contains a one-year statute of limitations within which a state prisoner may file a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). The one-year limitation period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The "date on which the judgment became final" for the purpose of 28 U.S.C. §

5

2244(d)(1)(A) has been construed to mean when a petitioner may no longer seek further review because of (1) the denial of a petition for certiorari to the United States Supreme Court or (2) the expiration of the time to file such a petition. *See Clay v. United States,* 537 U.S. 522, 528, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); *Hill v. Braxton,* 277 F.3d 701, 704 (4th Cir.2002).

Section 2244(d)(2) clarifies that the running of the one-year period is suspended for any time that a "properly filed" state post-conviction proceeding "is pending." *Id.* § 2244(d)(2). The Fourth Circuit has construed a state post-conviction proceeding to include all state court proceedings "from initial filing [in the trial court] to final disposition by the highest state court." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). Upon final disposition of the state post-conviction proceeding, "the running of the § 2244(d) one-year period resumes." *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In other words, the one-year period begins at the conclusion of direct review, but is statutorily tolled if collateral proceedings are initiated in state court. Once collateral state court proceedings conclude, the limitation period begins to run again from the point at which it was tolled by initiation of the collateral proceedings.

The one-year limitations period may also be tolled in "'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)). The doctrine of equitable tolling is available only in extraordinary cases and only when the petitioner has diligently pursued his rights. Garden variety attorney negligence, lack of knowledge regarding the law, and *pro se* status are all insufficient grounds to justify equitable tolling. *See Lanahan v. Helsel*, No. CV JFM-15-2133, 2016 WL 4742231, at *2 (D. Md. Sept. 8,

2016) (citations omitted); *also Barrow v. New Orleans S.S. Ass'n,* 932 F. 2d 473, 478 (5th Cir. 1991) (refusing to apply equitable tolling where the delay in filing was the result of petitioner's unfamiliarity with the legal process or his lack of legal representation); *Rouse v. Lee,* 339 F.3d 238, 248-249 (4th Cir. 2003) (negligent mistake by party's counsel in interpreting AEDPA statute of limitations does not present extraordinary circumstances warranting equitable tolling); *Smith v. McGinnis,* 208 F.3d 13, 18 (2nd Cir. 2000) (*pro se* status does not establish sufficient ground for equitable tolling); *and Felder v. Johnson,* 204 F.3d 168, 171-173 (5th Cir. 2000) (lack of notice of AEDPA amendments and ignorance of the law are not rare and exceptional circumstances that warrant equitable tolling). Moreover, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Britt v. Commonwealth of Virginia*, No. 1:15CV1581, 2016 WL 1532238, at *3 (E.D. Va. Apr. 14, 2016) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

In this case, Petitioner does not dispute that the one-year time period began on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A); thus, Petitioner does not allege that subsections (B) through (D) of 28 U.S.C. § 2244(d)(1) apply in this matter. (ECF No. 27). Further, he does not appear to directly challenge the contention that his petition was not timely filed. (*Id.*). Rather, Petitioner argues that the court should apply equitable tolling such that his petition would be deemed timely. (*Id.*). The basis of Petitioner's argument is that there were delays between the dates on which the mandates were issued by the SCAWV and the dates on which he received notice of the mandates;

accordingly, Petitioner contends that the one-year statute of limitations should be tolled during those intervening periods of delay. (*Id.*).

In order to evaluate Petitioner's argument, a review of the relevant dates is necessary, which begins with his direct appeal. On November 16, 2012, the SCAWV issued its memorandum decision on Petitioner's appeal, affirming the conviction and sentence entered by the circuit court. *State v. Stone,* No. 11-1120, 2012 WL 5835071 (W.Va. Nov. 16, 2012). Petitioner then had 90 days to file a petition for a writ of *certiorari* in the United States Supreme Court. The undersigned notes that, contrary to the positions of the parties, the period for filing a writ of *certiorari* commences the day after the SCAWV issues it judgment, not the day after it issues a mandate. *See* Sup. Ct. R. 13. Rule 13 (3) of the Rules of the Supreme Court of the United States explicitly states that the "time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed*, and not from the issuance date of the mandate* (or its equivalent under local practice.)" *Id.* (emphasis added). Petitioner did not file a petition for a writ of *certiorari*; consequently, the AEDPA's one-year statute of limitations began to run on the day after the 90 days expired, which was **February 15, 2013**. Petitioner's statute of limitations continued to run through **December 12, 2013** (the day before Petitioner filed his state habeas petition). [2] At that point, Petitioner had used **301 days** of the 365

---

[2] The mailbox rule does not extend the AEDPA's limitations period. *See Rouse v. Lee*, 339 F.3d 238, 245–46 (4th Cir. 2003). However, when calculating the period, Fed. R. Civ. P. 6(a) states as follows:

**(a) Computing Time.** The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
**(1) Period Stated in Days or a Longer Unit.**
When the period is stated in days or a longer unit of time:
**(A)** exclude the day of the event that triggers the period;
**(B)** count every day, including intermediate Saturdays, Sundays, and legal holidays; and**(C)** include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

days available under the AEDPA.

The limitations period was then statutorily tolled during the pendency of Petitioner's state habeas action. *See* 28 U.S.C. § 2244(d)(2). On June 15, 2015, the SCAWV issued its second memorandum decision, which affirmed the circuit court's order denying Petitioner's state habeas petition. However, the limitations period did not begin to run, because the judgment on Petitioner's habeas appeal was not final until the SCAWV issued its mandate. On September 1, 2015, the SCAWV issued the mandate, officially terminating its jurisdiction over Petitioner's case and simultaneously exhausting Petitioner's state remedies on the issues raised in his state habeas petition. *See* W. Va. R. App. P. 26(a). At this time, the AEDPA's statute of limitations resumed, beginning to run on the day following the mandate—**September 2, 2015**—and continuing to run another **177 days** through **February 25, 2016** (the day before Petitioner commenced the instant action). Therefore, Petitioner's federal habeas petition was not timely filed given that a total of **478 days** elapsed between the date that Petitioner's conviction and sentence became final and the date that Petitioner filed the instant action.

Nevertheless, Petitioner argues that he is entitled to equitable tolling for the periods between the dates on which the SCAWV issued mandates in both his direct appeal and his state habeas action and the dates on which he actually received notice of the mandates. (ECF No. 27 at 3). Put simply, Petitioner contends that this court should not count the 79 days between December 17, 2012 (the issuance of the direct appeal mandate) and March 6, 2013 (the date on which his sister contacted the court to check on the status of the appeal), or the 133 days between September 1, 2015 (the issuance of the state habeas mandate) and January 13, 2016 (the date that his sister contacted the court to check the status of his appeal and was notified of the mandate). (*Id.* at 4). Applying equitable tolling

9

to these periods, only a total of **324 days** would have elapsed before Petitioner sought federal habeas relief.

However, Petitioner's argument for equitable tolling is entirely without merit. As indicated by Respondent, this circuit uses the two-part *Holland* test in analyzing the propriety of equitable tolling. *See, e.g., Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2890, 192 L. Ed. 2d 925 (2015). Under the *Holland* test, a petitioner is entitled to equitable tolling only if he demonstrates (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (citation omitted). Petitioner's ignorance of the final mandates does not constitute an extraordinary circumstance that prevented him from timely filing his federal petition, nor do the facts of this case demonstrate that Petitioner used reasonable diligence to pursue his rights. Petitioner does not cite any controlling authority to support his contention that he is entitled to equitable tolling. Instead, Petitioner relies on two cases from sister circuits; *Miller v. Collins*, 305 F.3d 491 (6th Cir. 2002), which Petitioner claims stands for the proposition that a delay between the issuance of a lower court's decision and the date that the petitioner receives notice of the decision, can toll the period for filing a habeas corpus petition, (*Id.* at 2-3), and *Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008). Aside from the fact that the foregoing cases lack precedential value in this circuit, the undersigned finds that these cases are inapposite for other reasons.

First, the court in *Miller* utilized a legal standard that was superseded by the *Holland* two-part test. In *Miller*, the court evaluated whether the habeas petitioner was entitled to equitable tolling based upon a five-factor test established in *Dunlap v. United*

*States*, 250 F.3d 1001 (6th Cir. 2001). Much broader than the modern *Holland* test, the *Dunlap* test considered: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim." *Miller*, 305 F.3d at 495. However, the five-factor test applied in *Miller* is inconsistent with *Holland's* "extraordinary circumstances" test. *See Harris v. Cartledge*, No. CIV.A. 2:13-3417-MGL, 2014 WL 5426932, at *8 (D.S.C. Oct. 24, 2014) ("[A petitioner's] reliance upon *Collins* is misplaced; the grounds that *Collins* recognizes as a basis for tolling appear to be inconsistent with *Holland* and Fourth Circuit Court of Appeals precedent."). Indeed, the Sixth Circuit eventually replaced the *Dunlap* test with the *Holland* two-part test.[3] *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011) ("we conclude that *Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling.") (citation omitted). Consequently, the *Miller* case is of no help to Petitioner.

Second, the decision in *Diaz* is factually distinguishable from the present case. In *Diaz*, the Second Circuit made clear that only a prolonged delay by a state court in sending notice of a ruling that completes the exhaustion of state remedies can toll the AEDPA limitations period. *Id.* at 155. In *Diaz*, there was more than a seven-month delay between the issuance of the state court judgment and the date that the judgment was mailed to the

---

[3] Even before *Holland,* the decision in *Miller* was not universally accepted as good law in its own circuit. *See Sudberry v. Warden, S. Ohio Corr. Facility*, 626 F. Supp. 2d 767, 775 (S.D. Ohio 2009) (Noting that the Sixth Circuit's October 22, 2003 *en banc* decision in *Abela v. Martin,* 348 F.3d 164, 172 (6th Cir. 2003) overruled prior Sixth Circuit case law, including *Miller.*)

11

petitioner, a delay in mailing that was contrary to the local rule of the court. *Id.* When the petitioner in *Diaz* finally received the appellate court's ruling, he acted diligently in protecting his rights by filing his petition for a writ of habeas corpus the day following his receipt of the appellate judgment. *Id.*

Unlike *Diaz,* there was no prolonged delay in Petitioner's case. In fact, Petitioner offers no evidence showing that the SCAWV failed to timely *send* him or his counsel copies of the memorandum opinions and mandates. Instead, Petitioner claims only that he did not *receive* the mandates. However, Wayne King, Petitioner's counsel on direct appeal, confirms in an affidavit that the SCAWV promptly provided him with a copy of the memorandum decision affirming Petitioner's conviction and sentence, as well as with a copy of the mandate. (ECF No. 26-4 at 1). While Mr. King testifies that, believing the SCAWV had already sent copies of the documents to Petitioner, he did not forward copies himself, Mr. King's failure amounts to no more than simple negligence, and, therefore, does not provide grounds for equitable tolling.

Moreover, the evidence demonstrates that Petitioner received a copy of the SCAWV's memorandum decision affirming the circuit court's denial of his habeas petition within two weeks of the decision's issuance. (ECF No. 20-25). Although Petitioner claims he never received a copy of the mandate thereafter, his negligence in failing to pursue the mandate similarly provides no basis for equitable tolling. Between his receipt of the memorandum decision and the issuance of the mandate, Petitioner had discharged his attorney, making Petitioner responsible for tending to his own appeal. *Pro se* litigants are required to know and follow the rules of the court. W. Va. R. App. P. 4(a). Rule 26 of the West Virginia Rules of Appellate Procedure expressly states that a mandate will issue "as soon as practicable after the passage of thirty days from the date the opinion or

12

memorandum decision is released, unless the time is shortened or enlarged by order." W. Va. R. App. P. 26. When a petition for rehearing is made and subsequently denied, "the Clerk will issue the mandate within seven days of the date of the order refusing the rehearing petition, unless the time is shortened or enlarged by order." *Id.* Unlike the petitioner in *Diaz,* who had no way of anticipating when the appellate court would issue its decision, in this case, Petitioner received the SCAWV's memorandum decision, and the Rules of Appellate Procedure provided him with a roadmap of when to expect the mandate. His ignorance of the time frames contained in the appellate rules does not provide a basis for equitable tolling.

In addition, Petitioner is unable to demonstrate reasonable diligence. With respect to his direct appeal, the record is devoid of evidence showing efforts by Petitioner to contact Mr. King regarding the status of the case. Moreover, there is no dispute that once Petitioner learned of the direct appeal mandate in early March 2013, he delayed more than nine months before filing a state habeas petition. Petitioner fails to offer any explanation as to why he waited, in his words, "nine (9) months and seven (7) days" before filing his state habeas case. (ECF No. 27 at 4).

Petitioner has an even more tenuous positon in regard to his state habeas appeal. Petitioner's sister, Laura Davis, attests in an affidavit that her brother terminated the services of his habeas appellate lawyer after the appeal was filed, because it was apparent that the lawyer had not submitted a "complete" appeal. (ECF No. 26-2 at 2). According to Ms. Davis, after discharging his lawyer, Petitioner pursued the appeal *pro se,* but was not notified when the memorandum decision denying his appeal was issued by the SCAWV on June 15, 2015. (*Id.*). She explains that "not knowing that the appeal had been denied, my brother and I filed certain information and documents with the court," all of which

13

were subsequently denied. (*Id.* at 2-3). She also claims that neither she nor her brother were aware of the SCAWV's September 1, 2015 mandate until January 13, 2016, when Ms. Davis contacted the court and learned of the document. (*Id.* at 3).

However, other evidence in the record undermines the reliability of Ms. Davis's affidavit. The record unequivocally shows that Petitioner received a copy of the SCAWV's memorandum decision denying his habeas appeal within two weeks of its issuance. (ECF No. 20-25). According to Petitioner's letter discharging his attorney, Petitioner decided to proceed *pro se* going forward, in part because his attorney lost the appeal. (*Id.*). Therefore, Petitioner *chose* to assume complete responsibility for his appeal after he knew he had lost on the merits, but before receiving the mandate finalizing the decision. After discharging his counsel, Petitioner proceeded to file *pro se* motions with the SCAWV, which altered the thirty-day period for issuance of the mandate. Thus, it was incumbent on Petitioner to familiarize himself with the court's rules and obtain the mandate.[4] Once the motion for a rehearing was denied, Petitioner should have been looking for the court's mandate to arrive within seven to ten days pursuant to the appellate rules. Considering the prior delay he allegedly experienced in receiving a mandate from the SCAWV, one would have expected Petitioner to initiate contact with the SCAWV ten or eleven days after the motion for rehearing was denied. Yet, he failed to make any contact with the court until January 13, 2016. Under the factual circumstances of this case, waiting four months to make the first contact—and nearly seven months after he received a copy of the memorandum decision denying his habeas appeal—was not reasonably diligent.

---

[4] Notably, Petitioner does not suggest that the SCAWV failed to send him the order denying his request for rehearing, or any other order related to his *pro se* filings. The only document Petitioner claims not to have received was the mandate. Similarly, Ms. Davis's affidavit suggests that Petitioner received notification of the rulings on his *pro se* motions. (ECF No. 26-2).

Even more significant, after receiving the mandate in January, Petitioner waited another "one (1) month and thirteen (13) days" before initiating his federal habeas action. (ECF No. 27 at 4). Petitioner cannot attribute that delay to anything but his own negligence or indolence. Certainly, the delay was not occasioned by the complexity of the habeas petition he filed, given that the "petition" in this case consisted of a cryptic one-page letter with two pre-existing attachments. (ECF No. 1). Petitioner's actions after receiving each of the mandates were the antithesis of reasonable diligence. As previously stated, equitable tolling is warranted only in extraordinary circumstances, when the petitioner has been diligent, but is prevented from filing a timely federal habeas action for reasons beyond his control. *Holland*, 560 U.S. at 649. The *Holland* test presents a steep hurdle for litigants. While the precise situation presented herein has not been considered by the Fourth Circuit, other district courts in this circuit have declined to extend equitable tolling based on a delay between the issuance and notice of a state court decision when the petitioner failed to exercise reasonable diligence in protecting his rights. *See Bailey v. Johnson*, No. 1:08CV842 LO/TRJ, 2009 WL 2232747, at *4–5 (E.D. Va. July 20, 2009) (collecting cases); *and Frederick v. McCabe*, No. CIV.A. 9:11-211-RBH, 2011 WL 6026659, at *4 (D.S.C. Sept. 29, 2011), *report and recommendation adopted,* No. 9:11-CV-00211-RBH, 2011 WL 6026611 (D.S.C. Dec. 5, 2011) (Finding that a nine-month delay in filing a habeas petition after a period of equitable tolling was not reasonably diligent).

Therefore, the undersigned **FINDS** that Petitioner has failed to show extraordinary circumstances beyond his control that prevented him from timely filing his federal petition, and likewise has failed to demonstrate reasonable diligence in the pursuit of his rights. As such, Petitioner is not entitled to equitable tolling of the statute of limitations prescribed in the AEDPA. Thus, Petitioner's request for habeas relief should

be denied as untimely.

## IV.     Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1. Respondent's Motion to Dismiss, (ECF No. 20), be **GRANTED**;

2. Petitioner's pending motions requesting that the court accept "new evidence" relating to his petition, (ECF No. 7); grant him leave to file a brief in support of his petition, (ECF No. 8);[5] grant him leave to amend his petition, (ECF No. 18); accept "new evidence" relating to his petition; (ECF No. 23); and grant him leave to file a brief in support of his petition, (ECF No. 24), be **DENIED** as moot; and

3. Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 6), be **DENIED** and **DISMISSED, with prejudice.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

---

[5] Identical motions are pending in Case No. 2:16-cv-03187, which was consolidated into the instant matter. Therefore, the undersigned also recommends that the District Judge deny as moot Petitioner's motions requesting that the court accept "new evidence" relating to his petition, (ECF No. 9), and his motion for leave to file a brief in support of his petition, (ECF No. 10), filed in Case No. 2:16-cv-03187.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Johnston and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to counsel of record.

**FILED:** September 23, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge